No. 26-3009

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

────────────────

**UNITED STATES OF AMERICA**,
*Plaintiff—Appellee,*

*v.*

**BRIAN COLE, JR.,**
*Defendant—Appellant.*

────────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
THE HONORABLE AMIR H. ALI, DISTRICT JUDGE
CASE NO. 1:26-CR-00001

────────────────

## APPELLANT'S REPLY MEMORANDUM OF LAW AND FACT

────────────────

MARIO B. WILLIAMS
JOHN M. SHOREMAN
HUMANITY DIGNITY AND
RIGHTS LLC
Life Time Work - Buckhead
3480 Peachtree Road, NE, 2d Flr
Atlanta, Georgia 30326
(470) 257-2485
mwilliams@hdrattorneys.com
jms@mcfaddenshoreman.com

J. ALEX LITTLE
ZACK C. LAWSON
JOHN R. GLOVER
LITSON PLLC
54 Music Sq. E., Ste. 300
Nashville, TN, 37203
(615) 985-8205
alex@litson.co
zack@litson.co
jr@litson.co

March 30, 2026

## INTRODUCTION

Brian Cole Jr. is a 30-year-old man with no criminal history, no history of violence, and no alleged dangerous conduct outside the offense conduct charged in this case. He is autistic, has been diagnosed with OCD, and has spent the more than five years since the alleged offense living quietly at home, with no allegations of any threatening or dangerous behavior during that entire period. He is presumed innocent.

Yet the government seeks to hold him without bail pending trial on a dangerousness finding that rests on a factual premise that the government now concedes is wrong. Namely, Magistrate Judge Sharbaugh's dangerousness finding turned in large part on his mistaken belief that Cole conducted a potassium chlorate experiment after the January 2021 offense—evidence he treated as overcoming an otherwise "reasonably persuasive" five-year gap in dangerous conduct since the alleged offense.

The district court was presented with evidence that this potassium chlorate experiment was part of a science project to make a model rocket around eight years ago—a fact the government does not dispute. But the district court's minute order nonetheless adopted and relied on the

Magistrate Judge's findings, which was clearly erroneous on this critical point.

What remains of the record does not establish present dangerousness under *Munchel*, and neither the government nor the district court has articulated any present, forward-looking risk of danger Cole poses. And the strict conditions Cole has proposed, including home detention, GPS monitoring, unannounced inspections, and a retired federal law enforcement officer living in the home in a gated and secured subdivision, would address any possible risk, if one existed.

The district court also erred in denying release under 18 U.S.C. § 3060(d), which mandates discharge when the government fails to provide a timely preliminary hearing. The government's mootness argument fails, and the Superior Court indictment did not satisfy the statute's requirements. This Court should reverse and order Cole's immediate release.

## ARGUMENT

I.  **The District Court's Detention Order Rests on a Factual Error Now Conceded by the Government and Cannot Stand.**

The district court's dangerousness finding fails that standard for three independent reasons: (i) it rests on a factual finding the government now concedes was wrong; (ii) what remains of the record does not establish an articulable present threat; and (iii) the proposed conditions directly address every risk the government identifies.

### A. The Detention Order Relies on a Factual Finding the Government Now Concedes Is Wrong.

Magistrate Judge Sharbaugh was explicit that a large part of his reasoning for ordering detention was because he thought Cole made potassium chlorate *after* the alleged offense conduct. He acknowledged that Cole's five-year gap in dangerous conduct was "reasonably persuasive," and stated that "if there were truly no proffered evidence about comparable or otherwise dangerous conduct across the past five years, the Court might consider this a more suitable case for release on strict conditions." ECF No. 28 at 14. But he concluded the gap was not dispositive because the record contained such evidence. The potassium chlorate powder experiment was central to that finding; Judge

4

Sharbaugh cited it just after acknowledging the gap, noting that Cole "apparently told the FBI that at some point after January 5, 2021, he again created (or attempted to create) another batch of powder[1]," and that this "ongoing alleged activity" was "at least consistent with continued 'bombmaking' activity." ECF No. 28 at 15. That finding—that the experiment was post-offense "ongoing" dangerous conduct—is what bridged the five-year gap. Judge Ali then affirmed Judge Sharbaugh's analysis after independent review, including this finding.

The problem is that the finding was wrong. The government argued at the detention hearing that the potassium chlorate experiment occurred after the January 2021 offense, relying on Cole's post-arrest statement. Cole's mother submitted a declaration before Judge Ali establishing that the experiment occurred approximately in 2018—years before the charged conduct. The government now concedes the point,

---

[1] There was never any allegation that Cole made "another batch of powder" at any point other than the powder he allegedly made to carry out the offense conduct. It is assumed that Judge Sharbaugh referred to Cole attempting to make potassium chlorate, which the record shows was a science experiment to make a model rocket, predating the offense conduct.

5

acknowledging that it was "the government's prior understanding that this experiment occurred afterward." Appellee Br. 25.

The government's only response is that even if the experiment pre-dated the offense, it was "consistent with a longstanding interest in explosives." Appellee Br. 12. And it dismisses the timing correction as a fact that "played only a minor role in Judge Sharbaugh's analysis." Appellee Br. 25.

Both moves fail. The government's "minor role" characterization is contradicted by Judge Sharbaugh's own opinion, which treated the experiment as the evidence that overcame an otherwise "reasonably persuasive" gap in dangerous conduct. ECF No. 28 at 14. His framework was explicit: the five-year absence of dangerous conduct would have favored release *but for* the existence of "comparable or otherwise dangerous conduct" during that period. *Id.* The experiment—framed as post-offense "ongoing" activity consistent with continued bombmaking—was his primary answer to that "but for." It was the load-bearing factual finding.

Nor does the "longstanding interest" recharacterization save the detention order. Judge Sharbaugh used the experiment as evidence of

6

*post-offense dangerous conduct*, the specific category his framework required to overcome the five-year gap. The government now asks this Court to sustain the detention order on a theory—mere background character evidence of a preexisting interest in "explosives"—that the Court never adopted. The recharacterization is also wrong on its own terms: the record shows a science experiment aimed at making fuel for a model rocket, using beakers, resulting in a bleach stain on the carpet. That is not dangerous conduct. It is not evidence of propensity for violence. Labeling it a demonstration of "longstanding interest in explosives" to justify pretrial detention eight years later, for conduct he has not repeated, is precisely the kind of generalization about past conduct that *Munchel* forbids. Appellee Br. 12.

Judge Ali's affirmance of Judge Sharbaugh's finding—despite having the uncontested declaration explaining the context and timing of the model rocket experiment before him—was clear error. There is simply no record evidence supporting the Magistrate Judge's now-conceded error.

Moreover, when "it does not appear that the District Court considered substantial countervailing evidence that supported release,"

the appropriate remedy is remand. *United States v. Munchel*, 991 F.3d 1273 at 1282 (citation omitted). Judge Ali's minute order is a single sentence that fails to explain why the concededly erroneous finding did not affect the analysis. This alone should result in reversal.

### B. What Remains of the Record Does Not Establish an Articulable Present Threat.

Strip away the potassium chlorate experiment and what the government has left is hardware components found in Cole's car and closet with original purchase receipts and phone wipes. Neither separately nor together constitutes clear and convincing evidence of a present danger that conditions cannot address.

***The retained components.*** The government points to Cole's post-offense purchase of pipes, end caps, wire, and steel wool through August 2022, and their presence at arrest years later. But these are ordinary hardware items, individually innocuous, found with original receipts, in locations Cole accessed every day. A person concealing dangerous activity does not store the evidence receipts in his car for three years. Cole had every opportunity to act during the years those items sat in his closet and vehicle. He never did, and the government never alleges that he did. The components' presence does not demonstrate present danger. Combined

8

with Cole's autism and OCD diagnoses, the more natural explanation for retained household items is behavioral, not sinister.

More fundamentally, the government's own theory of the charged offense illustrates why these components alone present no threat. The alleged offense, as the government tells it, involved years of deliberate procurement across multiple store visits, financial transactions traceable by card, and hours of assembly involving numerous specific components working in combination. The government identifies no explosive powder, no timing device, no battery, no complete set of materials. Without the full complement of components, what Cole allegedly retained is hardware—not a weapon. And more critically, the government offered no evidence that he has any present intention or motivation to produce any explosive.

***The phone wiping.*** The government offers 941 phone wipes as evidence Cole will conceal his conduct and evade supervision. This argument is not based on evidence or context. To start, the government never identified what Cole was supposedly wiping, never argued he used his phone in the commission of the offense, and never explained what incriminating information he would have possessed years later requiring

hundreds of wipes. Moreover, the timing of the wiping—beginning in earnest eighteen months after the charged conduct—is inconsistent with evidence destruction tied to January 2021 and directly consistent with the compulsive behavioral pattern described in the OCD diagnosis. The government has no answer for this. Instead, its only response is the bare assertion that wiping is "far more consistent" with concealment than OCD. Appellee Br. 13. But it offers no evidentiary basis for that assertion against an uncontested clinical explanation.

The government's concealment theory is also irreconcilable with its own case. The government argues that Cole confessed in detail to FBI agents, walking them through the construction and placement of the devices. A defendant who confesses everything to law enforcement is not simultaneously engaged in a sophisticated scheme to destroy digital evidence. There is no evidence Cole would evade his bond conditions.

## C. The Government's Remaining Arguments Have Nothing To Do With Present Dangerousness.

The detention inquiry turns on "a specific, forward-looking assessment of whether [the defendants] as individuals currently pose an unmitigable threat to public safety." *Munchel*, 991 F.3d at 1285 (Katsas, J., concurring). Yet everything the government points to goes to Cole's

10

hypothetical capability to cause danger—not any present dangerousness. The government argues that Cole presents an ongoing threat because pipe bomb components are available at hardware stores and assembly can be accomplished in hours. But capability is not dangerousness. Nearly every defendant charged with a violent offense has, due to the underlying charge, allegedly demonstrated the capability to commit violence. Defendants charged with violent crimes committed in an instant with no preparation often receive conditions of release. *See, e.g., United States v. Blanco-Cordova*, No. 2019 CF3 014456 (D.C.) (defendant released from custody after pointing gun at taxi driver). The question *Munchel* demands is not whether a defendant could act but whether there is evidence he currently poses an unmitigable threat, and whether conditions can address that risk.

On present threat, the government has nothing. It identifies no threatening communications, no surveillance of targets, no extremist affiliations, no alleged acquisition of any materials since August 2022, no alleged sinister use of any materials since the January 2021 offense, and it points to no dangerous conduct of any kind in his 30 years other than the offense conduct. The government's theory that Cole "snapped" in

11

response to a specific political moment that has long since passed describes a singular, situational grievance, not a continuing dangerous disposition. The government offers no basis to conclude that any grievance persists or that a similar snap is forthcoming.

Judge Sharbaugh's attempt to distinguish *Munchel* on the ground that Cole chose targets "accessible to the general public at any time," ECF 28 at 18, ignores that the alleged conduct, as the government tells it, was the result of a specific political grievance at a specific moment, years of deliberate procurement across multiple transactions, and hours of assembly. The government has shown that hardware stores remain open. It has not shown that any of the other conditions that allegedly produced the offense currently exist. And critically, it has not shown how the strict conditions proposed by Cole are insufficient to stop some articulable threat of danger.

This Court in *Munchel* addressed this very point about specific circumstances and future dangerousness. There, the Court reversed because the district court failed to consider how the defendants "were a danger to act against Congress in the future . . . now that the specific circumstances of January 6 have passed." *Munchel*, 991 F.3d at 1284

12

(internal quotations omitted). Here, Judge Sharbaugh found the "specific circumstances" of "placing the two IEDs in the immediate vicinity of the U.S. Capitol the night before U.S. lawmakers were set to gather to certify the results of the 2020 election" to "interfere with that process" and causing "resulting fear and alarm" on January 6, 2021. ECF No. 28 at 10. But neither the lower courts nor the government can show how Cole is a present danger to the community as a whole, or the DNC and RNC, especially "now that the specific circumstances of January 6 have passed."

And even if the government could provide evidence that Cole has any present intention of causing harm, which it cannot, it also cannot explain why the proposed conditions would not thwart any such (nonexistent) dangerousness. The government argues that the proposed bond conditions could not stop Cole from producing and deploying a pipe bomb. This does not make sense. The alleged offense required years of procurement across multiple transactions and hours of assembly involving numerous specific components. Every step of that process is detectable and interruptible. The proposed conditions—home detention, GPS monitoring, unannounced inspections, and a retired federal law

13

enforcement officer in a gated community with 24-hour guard coverage—address every step. Neither the government nor the district court has explained how Cole could circumvent all of that. The government just speculates that he "might find a way to secretly obtain commonplace items," Appellee Br. 23, but that speculation proves nothing.

The government has not identified an articulable present threat. It has not shown that Cole has any present intention to harm anyone. And it has not explained why comprehensive conditions—including a custodian uniquely equipped by professional training to detect suspicious behavior—cannot address the theoretical risk it imagines. This Court should reverse.

## II. The District Court Also Erred in Denying Cole's Motion for Release Under 18 U.S.C. § 3060(d).

Even if the government's arguments on dangerousness were sufficient, and they are not, the district court independently erred by denying Cole's motion for release under 18 U.S.C. § 3060(d).

### A. Cole's § 3060 claim is not moot.

This Court can still grant the relief Congress prescribed. A case is moot only if "no meaningful relief is possible." *Anderson v. Carter*, 802 F.3d 4, 11 (D.C. Cir. 2015) (citations omitted). But meaningful relief

remains available here. If Cole was denied the timely preliminary hearing required by 18 U.S.C. § 3060, which he was, then § 3060(d) directs that he "shall be discharged." The government's later federal indictment means the *prosecution* may continue "without prejudice" but not the detention. That is the remedy Congress established.

The government's interpretation fights the statute's text. The government (at 29-30) reads into the statute a rule that a later indictment retroactively cures the violation. But Congress never said that. A timely indictment eliminates the hearing right; an untimely one does not. Congress never said that the discharge remedy evaporates once the government secures an indictment after the deadline has passed. And it did not say that courts lose power to enforce subsection (d) once prosecutors obtain the indictment they failed to secure on time under subsection (e).

Nor does that reading make much sense. It would rewrite § 3060 by converting a mandatory remedy into an empty promise. Under the government's theory, whenever the hearing deadline is missed, the government need only obtain an indictment later and then argue that no court can award "meaningful relief." Consider how that approach would

15

gut § 3060(d) in the mine-run of cases. By the time a defendant could obtain review, the government will almost always have secured an indictment. If that later indictment moots the claim, then the statute's remedy is practically unenforceable.

That is precisely the kind of interpretation courts reject. The Supreme Court has repeatedly applied the presumption against ineffectiveness—the basic principle that "Congress presumably does not enact useless laws." *United States v. Castleman*, 572 U.S. 157, 178 (2014) (Scalia, J., concurring). And a "modest corollary" to this "commonsense proposition" is that courts must avoid interpretations of a statute that would "rende[r] the law in a great measure nugatory, and enable offenders to elude its provisions in the most easy manner." *Garland v. Cargill*, 602 U.S. 406, 427 (2024) (citation and quotation omitted). But the government's interpretation does exactly that. It would render subsection (d) insignificant by allowing the government to evade the sole consequence Congress prescribed.

The government tries to avoid that problem (at 30) by relying on the fact that discharge is "without prejudice . . . to the institution of further criminal proceedings"—claiming that this phrase "include[s]

16

detention proceedings." But that clause preserves the prosecution. It does not nullify the remedy. The better reading—Cole's reading—gives effect to *each* part of the statute. If "without prejudice" means that the government can continue the *same pretrial detention* notwithstanding subsection (d)'s command that the defendant "shall be discharged," then subsection (d) does no work at all.

### B. The D.C. Superior Court indictment did not satisfy § 3060(e).

The government's position—that no preliminary hearing was required because a Superior Court grand jury returned an indictment on December 29—fails for two independent reasons.

### i. As of December 30, there was no accepted, operative federal indictment that displaced Cole's right to a preliminary hearing.

Section 3060(e) excuses a preliminary hearing only if the defendant is indicted "prior to the date fixed" for that hearing. Here, that date was December 30. But on that day, Judge Sharbaugh did not treat the December 29 Superior Court indictment as already operative for purposes of § 3060(e). To the contrary, he stated that he was uncertain whether he could accept the indictment in light of the stay entered in *Stewart*, requested briefing on that issue, and continued the hearing

17

while he considered it. He did not accept the indictment until January 2 (and even then it was only a "conditional" acceptance). All the government says about this is that "[i]t is not clear why Judge Sharbaugh was so concerned" with accepting the Superior Court indictment on December 30. Appellee Br. at 38. But that sequence alone defeats the government's reliance on subsection (e).

The government cannot have it both ways. If the Superior Court indictment automatically satisfied § 3060(e) on December 29, then why was there any need for Judge Sharbaugh to continue the preliminary hearing on December 30? According to the government, Cole's hearing right had already been extinguished. But if, as Judge Sharbaugh recognized, additional briefing and judicial determination were required before that instrument could be treated as operative in federal court, then § 3060(e) had not yet been satisfied by the date fixed for the hearing. The government's attempt to rely on both propositions at once only underscores the problem, and the government never tries to reconcile it.

### ii. The later federal indictment does not authorize Cole's continued detention.

Even if Judge Sharbaugh had immediately accepted the December 29 Superior Court indictment, it still would not satisfy § 3060(e). Nothing

18

in the Federal Rules (or in § 3060(e)) suggests that Congress meant to include, as an alternative substitute, an indictment issued by a different court system under different supervisory rules.

The government claims (at 34) that Cole's reading depends on a disfavored "repeals by implication" of D.C. Code § 11-1916. Not so. The Federal Rules don't impliedly repealed § 11-1916; the Rules Enabling Act *expressly* resolves any conflict in favor of the Federal Rules. *See* 28 U.S.C. § 2072(b). The relevant question is, therefore, whether the Federal Rules and the government's reading of § 11-1916 conflict. They do. Congress already decided that the conflicting law is of no further force or effect to the extent of the conflict. That is a crucial distinction. The government's invocation of the anti-repeal canon therefore skips over the Rules Enabling Act, which actually resolves the conflict.

Next, the government says (at 36) that "Rule 7 does not say that an indictment must comply with Rules 1 and 6"—in essence, that not every indictment must satisfy Rules 1 and 6 because Rule 7 never says so explicitly—proves *far* too much. Rule 7 does not purport to exhaust *every* prerequisite of a valid federal indictment. On the government's logic, an indictment would be valid so long as it contained Rule 7's "plain, concise,

19

and definite" statement and a government signature, even if it were returned by a body never summoned by a federal court, outside the Rule 6 process, and under a wholly different supervisory regime.

That cannot be right. To read Rule 7 in isolation to make room for indictments returned by the D.C. Superior Court, as the government urges, is a purely *ad hoc* reading of the Rules that the Court should not countenance. And because § 3060(e) uses an indictment as the substitute probable cause for a preliminary hearing, the Court should not assume that Congress silently meant any document labeled "indictment," no matter how produced, to carry that consequence.

## C. The lower court abused its discretion in finding that "extraordinary circumstances" existed to continue the preliminary hearing.

Section 3060(c) permits a continuance only if "extraordinary circumstances exist and justice requires the delay." That exception is narrow, and it is not a general license to postpone a preliminary hearing whenever delay is useful to the government. *United States v. Gurary*, 793 F.2d 468, 473 (2d Cir. 1986) ("extraordinary circumstances" means factual events that prevent the court from "*holding* the hearing," and

20

cannot be found merely to "enable the Government to *avoid* the hearing by securing return of an indictment").

That is what happened here. Nothing prevented a hearing on December 30. Court was already convened, and Judge Sharbaugh indicated that, absent the uncertainty surrounding the Superior Court indictment, he would have promptly proceeded. The government's self-created legal uncertainty was not an "extraordinary circumstance."

Though it never argued so below, the government adopts Judge Sharbaugh's reasoning in now arguing that the Superior Court indictment issue is an "extraordinary circumstance" because it is unique to the District of Columbia. But novelty is not enough. Section 3060(c) asks whether extraordinary circumstances prevented a timely hearing, not whether the government raised an unusual legal question about the validity of an indictment it sought. *Cf. United States v. Vaughn*, 492 F. Supp. 3d 336, 341 (D.N.J. 2020) ("the difficulties engendered by the COVID-19 pandemic" did not constitute "extraordinary circumstances"); *Elms v. United States*, 457 F.Supp.3d 897, 900 (D. Nev. 2020) ("extraordinary circumstances" do not exist merely because there was no grand jury sitting, which the government should have foreseen).

21

22

Because the hearing could have gone forward on December 30, the continuance was erroneous, and Cole should have been released.

## CONCLUSION

This Court should reverse and order Cole's immediate release.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPEFACE, AND STYLE REQUIREMENTS**

This document complies with the type-volume limitation set by this Court's order (Per Curiam Order 03/09/2026), because it contains 3,893 words according to the Microsoft Word word processing program, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This memorandum complies with the typeface requirements of Circuit Rule 32(e)(1) because it has been prepared in a proportionally spaced serif typeface, Century Schoolbook, at a font-size of 14.

By: */s/ J. Alex Little*
    J. ALEX LITTLE

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served via the Court's CM/ECF system upon all counsel of record.

By: */s/ J. Alex Little*
    J. ALEX LITTLE